Peter Bogden, Sr., Appellee, v. Tull C. Lasswell, Appellant.

Gen. No. 9,536.

Opinion filed May 22, 1947.  Released for publication June 17, 1947.

Londrigan & Londrigan, of Springfield, for appellant.

Pree & Pree, of Springfield, for appellee.

Mr. Justice Wheat delivered the opinion of the court.

Plaintiff appellee, Peter Bogden, Sr., filed his complaint in forcible entry and detainer against the defendant appellant, Tull C. Lasswell, to recover possession of certain premises in Springfield, Illinois, used for tavern purposes. The trial court denied a motion to quash the summons and return thereon, denied a motion to dismiss the complaint, and upon defendant's election to stand on such latter motion, entered judgment for possession in favor of plaintiff, from which judgment this appeal follows.

On July 25, 1942, the parties executed a written lease whereby plaintiff leased to defendant a building known as 1720 and 1722 West Monroe street, Springfield, Illinois, together with a three car garage, parking lot, and miscellaneous chattel property consisting of tables, chairs, piano, bars, cooler, etc. The term of the lease was five years with an option to renew for an additional five-year period. The premises were to be "occupied for the purpose of a tavern or other business purposes." The lessee agreed that he "will not permit or suffer any noisy, noxious or offensive trade, business or occupation, or any heavy manufacturing to be carried on in said premises." The lease also contained the provision that "if default shall be made in any of the covenants and agreements herein contained . . . it shall and may be lawful for the said lessor . . . at his election, to declare said term ended, and into the said premises, or any part thereof, in the name of the whole, to re-enter; . . . and the said premises again repossess and enjoy, as in the first and former estate, and in such case . . . the lessee . . .

does hereby covenant and agree to surrender and deliver up said above described premises and property peaceable to said lessor . . . and if he shall remain in possession of the same after such default, or after the termination of this lease, in any of the ways above named, he shall be deemed guilty of a forcible detainer of said premises.''

The complaint, after setting out the provisions of the lease, charged that the defendant while in possession under the lease knowingly permitted and suffered games of chance to be conducted upon said premises in violation of the laws of the State of Illinois and in violation of the terms of such lease; that on February 28, 1946, plaintiff's attorney notified defendant, by registered mail,. as follows: ''Mr. Peter Bogden, Sr., with whom you have a lease on the premises located at the above address, has called upon me in connection with your lease. He advises me that you are conducting games of chance on these premises. I have informed him that in my judgment this violation of the law requires that he protect his interests and is sufficient ground for cancellation of the lease. I have been directed by him to notify you that the lease heretofore entered into between him and you on July 25, 1942, is therefore terminated and cancelled. He demands now, that you deliver possession of said premises to him immediately. Unless compliance with this demand is immediately made upon your part I am directed to take such steps as may be necessary for the purpose of securing possession and seeing that the premises are vacated by you. You are further notified that any further or continuance of the law violation referred to will be prosecuted by complaint *thr* (sic) proper criminal channels.''

Defendant moved to strike the complaint, asserting (1) that the notice to terminate the tenancy and demand for possession was not sufficient under sec. 9, ch. 80, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 72.09],

because it called for immediate possession; (2) that such notice was not served in the manner provided by sec. 10 of such ch. 80 [Jones Ill. Stats. Ann. 72.10]; and, (3) that the notice of election does not claim any violation of the lease nor allege any facts amounting to a violation.

Although the complaint does not charge the offense of gambling with the certainty necessary in an indictment or information, it is apparent that the language "knowingly permitted and suffered games of chance to be conducted upon said premises in violation of the law of the State of Illinois" taken in connection with the statements in the notice, "He advises me that you are conducting games of chance on these premises; . . . this violation of the law requires that he protect his interests; . . . any further or continuance of the law violation referred to will be prosecuted by complaint *thr* (sic) proper criminal channels" sufficiently set forth an allegation of the violation of the criminal code by gambling.

Paragraph 325, ch. 38, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 37.255], provides that whoever knowingly rents a place for gambling purposes, upon conviction thereof, shall be criminally liable. In the case of *Kelly v. Williams*, 162 Ill. App. 571, it was held that knowingly leasing premises for an unlawful and illegal purpose renders the contract void. Every lease contains an obligation upon the lessee to use the premises for a lawful purpose. (*Corpus Juris,* vol. 36, sec. 719). In the case of *Launtz v. Vogt*, 133 Ill. App. 255, the premises were rented for saloon purposes. The landlord attempted to have the court declare a forfeiture of the lease because of the lessee permitting gambling and other illegal acts which would subject the landlord to liability. Although relief was denied solely because equity was not the proper forum, the court used this pertinent language: "Public policy forbids that the landlord's consent, express or implied,

written or oral, shall avail the tenant in the evasion of his contract obligations to comply with the law in the use of the premises. . . . To keep a dram-shop open on Sundays, and sell liquor to minors was in violation of law. To do this is to keep a disorderly house, and a business so conducted is calculated to injure the reputation and credit of the premises and neighborhood, and subject the owner to liability.''

It is the opinion of this court that the complaint sufficiently charged a violation of the express and implied terms of the lease as to the use of the premises for noxious or offensive purposes, and such use justified a forfeiture of the lease.

Defendant then argues that if a right to declare a forfeiture existed, plaintiff was required to proceed, as to notice, under sec. 9 of ch. 80, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 72.09], providing for a ten-day notice. The case of *Clark v. Stevens*, 221 Ill. App. 233, contains an excellent discussion of the law in regard to forfeitures with and without notice. Most of the cases cited by the parties hereto are discussed in this opinion and therefore will not be re-analyzed. In the *Clark* case, it was held that when the lease contains a waiver of notice, an action for possession may be commenced at once upon default, but if notice is not waived a landlord cannot declare a forfeiture by a mere mental resolve, but must communicate his declaration to the tenant. No case holds that such communication of mental resolve must be in accordance with sec. 9 aforesaid. Defendant has cited, in support of his contention, the case of *McKinney v. James A. Brady Foundry Co.*, 175 Ill. App. 569. As was said in *Clark v. Stevens*, the *McKinney* case involved an attempt by the landlord to terminate the lease under the provisions of sec. 9 aforesaid and has no application here.

In accordance with the above expression, it is our opinion that the notice in question was a sufficient declaration of forfeiture and plaintiff was not required

to comply with said sec. 9. The motion to dismiss the complaint was properly denied.

Prior to filing the motion to dismiss, defendant moved to quash the summons and return thereon, which motion was denied. The basis for the motion was that the summons was dated March 27, 1946, and the first return day noted was the third Monday of April 1946, an interval of only nineteen days. The summons then recited that if service was had less than twenty days from such date, appearance should be made on or before the first Monday in May 1946. Service was had on defendant March 29, 1946. No attempt to default defendant was made, and his motion to quash was filed May 3, 1946. It is argued that the return day must be not less than twenty days from the date of the summons, under the provisions of Supreme Court Rule 4, effective March 11, 1946. Plaintiff contends that the reference to a first return day in the summons was surplusage, and that the second return day, being more than twenty days and less than sixty days from the date of the summons, was a sufficient compliance with the rule.

This suit was commenced and the complaint was filed March 27, 1946. Summons was dated and issued on the same date, and was made returnable on the third Monday of April 1946, which was April 15, 1946. If March 27, the date of the summons, is excluded, but April 15, the date of the return day, is included, it appears that the summons was returnable nineteen days after its date.

Section 5 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 129; Jones Ill. Stats. Ann. 104.005] provides that "Every civil action . . . shall be commenced by the filing of a complaint. The clerk shall issue summons upon request of the plaintiff. The form and substance of such summons . . . shall be according to rules of (the Supreme) court."

Rule 3 of the Supreme Court (effective March 11, 1946) provides that "summons shall be issued by the clerk at the time the complaint is filed."

Rule 4 provides that the summons shall be made returnable on a return day designated by the plaintiff, "which day shall not be less than 20 nor more than 60 days after the date of such summons," that the first and third Mondays in each calendar month shall be return days, and that if practicable summons shall be served 20 days before the first return day mentioned therein, "but it may be served at any time on or before the return day, but service must be had not less than 20 days before the return day on which the defendant must appear or answer."

Rule 4 further provides, so far as is material:

"The summons shall be drawn in substantially the following form:

. . . . . .

"To the above named defendants:

"You are hereby summoned to answer the complaint in the above entitled cause.

"Take notice that you must file your answer or otherwise make your appearance in said court . . . on or before Monday——(month)——(day)——, 19—, provided this writ shall be served upon you not less than 20 days before said date,—but if this writ shall be served upon you less than 20 days before said date, and is served 20 days before Monday——(month)—— (day)——, 19—, you shall file your answer or otherwise make your appearance on said last mentioned date. . . ."

Rule 8 provides that:

"The defendant shall appear on or before the first return day named in the summons provided the summons shall be served upon him not less than 20 days prior to said return day, and in case said summons shall be served upon him less than 20 days before said

return day, the defendant shall appear on or before the next return day named in the summons.''

The foregoing are the only provisions of the statute and of the rules of the Supreme Court which are applicable.

In construing such rules, effect should be given to what appears to be the obvious intention of the Supreme Court, and it must be borne in mind that sec. 4 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 128; Jones Ill. Stats. Ann. 104.004] states that such Act shall be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties.

Liberally construing such rules, it is apparent that the intent is that a defendant can be summoned and required to appear and plead not later than any return day designated by the plaintiff, which is not less than 20 nor more than 60 days after the date of the summons. True, the first return day designated in the present case was less than 20 days after the date of the summons, but the second return day therein designated was more than 20 days after the date of the summons, and it was not ''practicable'' that such summons could be served 20 days before the first return day. The defendant in the present case had at least 20 days in which to plead, lost no rights, and was in no position to complain. The motion to quash was properly denied.

For the reasons indicated, the judgment of the circuit court is affirmed.

*Affirmed.*